UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-00045-WYD

SUSAN BRODEUR,

     Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

     Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

     THIS MATTER is before the Court on review of the Commissioner's decision that

denied claimant Susan Brodeur's ("Plaintiff") applications for disability insurance

benefits.  The case has a long history, as discussed below.

     On August 24, 1998, Plaintiff filed an application for disability insurance benefits

under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-33.  (Transcript

["Tr."] 20, 112-14, 281, 519).  Plaintiff alleged that she became disabled on February 15,

1996, due to thoracic outlet syndrome and myofascial pain syndrome due to a car

accident.  (*Id.* 20, 282, 522.)  The Colorado Disability Determination Services ("DDS")

denied Plaintiff's claim.  (*Id.* 141-45, 153-56, 519.)  Administrative Law Judge ("ALJ") E.

William Shaffer then held a hearing on July 29, 1999 and issued a decision in November

1999 finding that Plaintiff was not disabled at step five of the sequential evaluation.  (*Id.*

20, 35-67, 277-90, 519.)  Specifically, he found that Plaintiff retained the residual

functional capacity ("RFC") to perform sedentary work and that while she could not perform her past relevant work, other jobs existed in significant numbers in the national economy that she could perform.  (*Id.* 286-88.)  The Appeals Council remanded the case due to an incomplete transcript.  (*Id.* 326-28.)

ALJ Shaffer held a second hearing in September 2002 (Tr. 21, 68-111), and in October 2002, issued another decision denying Plaintiff's claim at step five.  (*Id.* 17-32.) He found that Plaintiff retained the RFC to perform less than the full range of sedentary to light exertional work activity and that while she could not perform her past relevant work, she could perform other jobs existing in significant numbers in the national economy.  (*Id.* 29-32.)  The Appeals Council declined review and Plaintiff appealed the decision to this Court.  On March 2, 2004, I issued an Order remanding the case to the Commissioner based on a number of errors.  (*Id.* 9-12, 401-16, 519.)

A different ALJ, Paul Keohane, held the third hearing on December 6, 2005.  (Tr. 459-505, 519.)  He issued an unfavorable decision on January 24, 2006, finding that Plaintiff could perform less than a full range of sedentary work and that while she could not perform her past relevant work, there were a significant number of jobs in the national economy that Plaintiff could perform.  (*Id.* 382-93.)  The Appeals Council declined review (*id.* 370-72) and Plaintiff appealed the decision to this Court.  In January 2007, I remanded the case yet again based on the Commissioner's voluntary motion to remand for additional administrative proceedings.  (*Id.* 532-39.)

ALJ Keohane held the fourth hearing on March 6, 2008.  (Tr. 618-60).  On June 5, 2008, he denied Plaintiff's claim for benefits at step five on the basis that Plaintiff

could perform light work and that while she could not perform her past relevant work, jobs existed in significant numbers in the national economy that Plaintiff could perform. (*Id*. 529-30.)  This is discussed in more detail below.  The Appeals Council declined review of the ALJ's decision in December 2008.  (*Id*. 507-09.)  This appeal followed.

II.     FACTUAL BACKGROUND

Plaintiff was born in April 1960, and was 35 years old on the date she alleged she became disabled.  As stated previously, she alleges disability since February 15, 1996, due to an automobile accident in September 2005.  Plaintiff has a high school education and past relevant work experience as a machine operator and in filing and data entry.  (Tr. 38-39, 42, 123, 125-38, 391, 451, 464, 528, 626.)

The pertinent decision at issue is ALJ Keohane's June 5, 2008 decision.  He found that Plaintiff was insured for Title II benefits through March 31, 2002 (Tr. 521, Finding 1), and that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date, February 15, 1996, through her date last insured. (*Id*., Finding 2.)  The ALJ determined at step two that Plaintiff had "severe" impairments of thoracic outlet syndrome and myofascial pain syndrome.  (*Id*. 522, Finding 3.)  At step three, the ALJ found that Plaintiff's medically determinable severe impairments did not meet or equal one of the listed impairments.  (*Id*. 523, Finding 4.)  The ALJ then determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a), with certain limitations.  (Tr. 523-24, Finding 4.)

In making this finding ALJ Keohane chose to give treating physician Dr. Rook's opinion that Plaintiff was capable of less than sedentary work "little weight" because he

found that the opinion was "not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence of record." (Tr. 527-28.) This was despite the fact that ALJ Keohane gave great weight to Dr. Rook's opinions in his prior decision. (*Id.* 390-91.) Instead, the ALJ adopted the RFC set out by consultative examiner Dr. Qutub, who conducted a physical examination and functional assessment of Plaintiff in 2007, finding that Dr. Qutub's opinion was supported by the opinion of the state agency physician. (*Id.* 528.)

At step four the ALJ found that Plaintiff was unable to perform the work-related activities required by her past relevant work as a machine cutter because the DOT describes the job as medium work. (Tr. 528, Finding 6.) However, he found, based on the testimony of a vocational expert ("VE"), that other work exists in significant numbers in the national economy that Plaintiff could perform, including school bus monitor, photocopy machine operator, and flagger. (*Id.* 529, Finding 10). The ALJ found, therefore, that Plaintiff was not disabled under the Act. (*Id.* 530, Finding 11).

The Appeals Council declined review of the ALJ's decision. (R. 6-8). Plaintiff then requested judicial review. The ALJ's decision became the final administrative decision, and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

III.    ANALYSIS

A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.      Whether the ALJ's Decision is Supported by Substantial Evidence

1.      The ALJ's Weighing of the Medical Evidence

Plaintiff argues that the ALJ gave improper weight to the opinions of treating physician Dr. Rook.  Dr. Rook began treating Plaintiff on May 30, 1996.  (Tr. 260-262.)  In the ensuing thirteen years, he has opined on multiple occasions that Plaintiff has significant exertional and non-exertional limitations.  (*Id.* 272-273, 307-08, 438, 555, 603-605.)  He has also repeatedly explained, in detail, the medical justification for his opinions regarding her limitations.  (*Id.*)  Plaintiff asserts that the ALJ inappropriately rejected Dr. Rook's opinions in favor of the opinion of a one-time consultative examiner.

Dr. Rook's opinions have been at the center of Plaintiff's claim and the multiple decisions in this case.  The first ALJ rejected Dr. Rook's opinions and denied Plaintiff's claim.  On March 1, 2005, this Court remanded Plaintiff's case, in part, because "the

ALJ's decision not to give controlling weight to the opinions of Plaintiff's treating physician [Dr. Rook] is not supported by substantial evidence." (Tr. 409.) At the subsequent hearing, the new ALJ, ALJ Keohane, accepted most of Dr. Rook's assessment, but rejected limitations that he gave regarding Plaintiff's ability to tolerate work stress. Another appeal was filed, and the claim was voluntarily remanded from this Court, in part, because Defendant agreed that the ALJ had erred with respect to the evaluation and treatment of Dr. Rook's opinions. Prior to the fourth hearing, the ALJ demanded that Plaintiff attend a consultative examination with Dr. Qutub. The ALJ then rejected Dr. Rook's opinion based on Dr. Qutub's assessment.

I agree with Plaintiff that the ALJ yet again did not properly weigh Dr. Rook's opinions. I first agree with Plaintiff that the starting point for assessing RFC is the treating physician's opinion. That is because an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted). The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

In considering the treating physician's opinion, "[a]n ALJ must first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques.'" *Robinson*, 366 F.3d at 1082 (citing SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted)). "If the answer to this question is 'no,' then the inquiry at this stage is complete." *Id.* "If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record." *Id.* "In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1994).

In this case, the ALJ found both that Dr. Rook's opinion was not well supported by medically acceptable clinical and laboratory diagnostic techniques and was not consistent with other substantial evidence in the record. (*Id.* 525, 527.) In support of the first finding, the ALJ referred to 1996 electrodiagnostic testing ("EMG"), which the ALJ stated did not support the existence of bilateral neurogenic thoracic outlet syndrome. (Tr. 525.) I find error with this finding. First, the ALJ is not a medical expert and is not qualified to interpret complex medical tests performed by the medical providers. The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'" *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)); *see also*

*Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) (the ALJ improperly substituted his medical judgment for that of the physician when he determined that the test results were not adequate to support a diagnosis). The ALJ did not cite to any medical evidence that supported his interpretation of the test results.

Second, the ALJ did not even understand Plaintiff's diagnosis. She has not been diagnosed with neurogenic thoracic outlet syndrome. Rather, the diagnosis is *myogenic* thoracic outlet syndrome. As Dr. Rook explained in a letter of July 9, 2008:

> That diagnosis [**neurogenic thoracic outlet syndrome**] implies that there is actual damage to the nerves that make up the brachial plexus. Rather, **myogenic thoracic outlet syndrome** typically does not show up on electrodiagnostic studies. This condition is caused by tight thoracic outlet musculature which does not cause frank damage to the brachial plexus. The diagnosis of myogenic thoracic outlet syndrome is a clinical one. The patient did fulfill the clinical criteria to make that diagnosis. In contrast, neurogenic thoracic outlet syndrome represents a worst-case scenario whereby there is actual nerve damage involving the lower trunk of the brachial plexus. That is not the case here.

(Tr. 605) (emphasis in original).

I acknowledge that this letter was provided to the Appeal Council, and was not available to the ALJ. The Appeals Council stated that this letter "did not provide new or material evidence or rationale that was not already appropriately considered by the ALJ." (Tr. 507.) However, I find that is simply not accurate as it applies to statements in the letter which correct misconceptions of the ALJ. These statements were new, material, and related to the time period before the ALJ's decision and thus qualify as evidence that had to be considered by the Appeals Council. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). I further find that since the Appeals Council

considered this letter in connection with Plaintiff's request for administrative review

(even though review was ultimately denied) (Tr. 507, it is now part of the record which I

assess "in evaluating the Commissioner's denial of benefits under the substantial

evidence standard." *Chambers*, 389 F.3d at 1142. The letter clearly does not support

the ALJ's finding about the EMG test and I find that the ALJ's reliance on this test to

support his decision regarding Dr. Rook is not supported by substantial evidence.

The ALJ also specifically referred to the results of a 2001 lumbar MRI which he

stated showed no evidence of significant impairments of the lower spine according to

Dr. Rook. Dr. Rook also discussed this opinion in his July 2008 letter:

> With regards to the commentary that the patient's lumbar MRI imaging was
> unrevealing, I would disagree with that statement. The patient's lumbar MRI
> demonstrated the presence of facet arthropathy at the L4-5 level bilaterally
> and a disc bulge at L5-S1. I have in the past commented that the report was
> unrevealing with regards to surgical pathology and I still believe that is the
> case. However, it is not unrevealing as there is evidence of objective
> pathology, as outlined above.

(Tr. 604.) Again, when this letter is considered as part of the record, it is clear that the

ALJ's conclusion about the MRI is not supported by substantial evidence.

The above discussion demonstrates that the ALJ misinterpreted the EMG test

and the MRI and that these tests provided objective evidence that supported Dr. Rook's

opinion, contrary to the ALJ's findings. Dr. Rook's letter also referenced multiple other

instances of "objective evidence" to substantiate Plaintiff's pain complaints. (Tr. 603.) It

noted that the record contained evidence of "chronic muscle spasm involving thoracic

outlet musculature" and "positive clinical responses to maneuvers that are consistent

with ... thoracic outlet syndrome." (*Id.*) It also noted that Plaintiff had a "positive

response to scalene blocks ... the diagnostic test that confirms the presence of thoracic outlet syndrome." (*Id.*) She ultimately underwent surgery to remove part of her scalene muscles and first rib. (*Id.* 210.) Dr. Rook stated, "[p]ostoperatively she did have short term relief of symptoms in her upper extremities. Unfortunately, the thoracic outlet symptoms returned after scar tissue formed at the surgical sites." (*Id.*)

The Commissioner argues that this letter is not relevant because it simply supports the ALJ's finding that Plaintiff's thoracic outlet syndrome was a severe impairment. However, the letter goes far beyond this, rebutting the ALJ's finding that the record lacked objective evidence to support Dr. Rook's opinions. As such, it was properly before the Appeals Council and is now part of the record I review in determining whether the ALJ's findings are supported by substantial evidence.

Additional examples of "objective findings" in the record which support Dr. Rook's opinions include his October 6, 1997 examination which documented "tenderness all along the course of the ulnar nerve which is the most likely nerve involved with a thoracic outlet syndrome" (Tr. 245), and an examination from October 8, 2001 which revealed "dural tension signs are positive bilaterally. The patient complains of numbness and tingling in her feet with dorsi flexion of both ankles on straight leg raising testing." (*Id.* 342.)[1]

The above discussion refutes the ALJ's finding that Dr. Rook's opinion is not supported by objective medical evidence. It also refutes his finding that Dr. Rook's

---

[1] According to Plaintiff's undisputed assertion, the dural tension sign is indicative of sciatic nerve irritation.

assessment of Plaintiff's functional capacity must be based "on the claimant's subjective complaints of her pain and incapacity". (Tr. 527.) Moreover, an ALJ may not reject the opinions of a treating physician "based merely on his own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints." *Langley*, 373 F.3d at 1121. "The ALJ [must have] a legal or evidentiary basis for his finding that [a treating physician's] opinions were based merely on Plaintiff's subjective complaints of pain. *Id.*; *see also Garcia v. Barnhart*, No. 05-2322, 2006 WL 1923984, at *3 (10th Cir. July 13, 2006) ("when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from correct legal standards and his decision is not supported by substantial evidence"). Accordingly, these findings of the ALJ are not supported by substantial evidence.

In rejecting Dr. Rook's opinions the ALJ also relied on the functional capacity evaluation ("FCE") Plaintiff underwent in 1998, finding that it was contrary to Dr. Rook's assessment. It must be noted, however, that the ALJ had previously dismissed the results of the FCE, stating that he "gives little weight to these opinions, instead deferring to the more favorable opinion of Dr. Rook, who has an extensive treatment history with the claimant." (Tr. 391.) The ALJ failed to explain this discrepancy.

More importantly, the medical evidence demonstrates that the FCE significantly overstated Plaintiff's capacity for sustained physical activities. This was recognized by the Court in its March 2, 2005 Order of Remand, which noted that "[a]fter the FCE, the evidence is undisputed that Plaintiff showed signs of significant pain and a decline in her

condition." (*Id.* 407.)  The ALJ completely ignored this finding, and indeed appeared to ignore altogether this Order.  I further note that the FCE was not performed by an acceptable medical source and no medical provider opined that the results of the FCE were valid.  *See Komar v. Apfel,* No. 97-5125, 1998 WL 30267, *2 (10th Cir. 1998)  ("a physical therapist's opinion . . . is [generally] entitled to less weight than that accorded to the opinions of acceptable medical sources").  Dr. Rook specifically rejected its results as inconsistent with Plaintiff's condition based on the later more severe work restrictions he imposed.  Therefore, I find that the FCE does not provide a legitimate basis to reject Dr. Rook's opinions.

It was also noted by the ALJ that the Plaintiff only sees Dr. Rook "every six to twelve months," and that "such infrequent treatment is not consistent with his finding that the claimant is so incapacitated." (Tr. 527.)  However, the ALJ's attempt to downplay Dr. Rook's role as a treating physician has no justification in the record.  The ALJ cannot reject Dr. Rooks' medical opinions and findings based on his own lay judgment that the opinions may be invalid because of Plaintiff's frequency of treatment.

The ALJ also failed to consider the fact that the record shows that Plaintiff had been placed on maximum medical improvement.  As Dr. Rook explained in his July 2008 letter, Ms. Brodeur "was placed at maximum medical improvement more than 10 years ago," and now receives maintenance care primarily in the form of medication management.  He stated "[t]he fact that I am seeing her at six-month intervals is a reflection of her reaching a plateau state upon completion of active treatment.  At this point she only requires maintenance medical care.  This does not require frequent visits,

since her pharmacologic regimen has remained stable for so many years." (Tr. 604.) This letter shows that the ALJ's finding in this regard is not a legitimate reason to reject Dr. Rook's opinions.

The ALJ also rejected Dr. Rook's opinions on the basis that Plaintiff "reported good pain relief with current medications, with few reported side effects." (Tr. 527). However, this is not a legitimate reason to reject Dr. Rook's opinions. The fact that Plaintiff's pain medications produce the intended result and provide pain relief certainly does not necessarily mean that she is capable of sustaining full-time work at the light exertional level as found by the ALJ. Given the fact that Dr. Rook has consistently opined that Plaintiff's capacity to work is severely limited even with the pain medication, the ALJ's findings in this regard were mere speculation. *See Robinson*, 366 F.3d at 1083 (10th Cir. 2004) (ALJ erred in ignoring fact that a doctor's treatment notes did not indicate that he believed that claimant was sufficiently stable to return to work even when on medication, and references to Plaintiff being "stable . . . may have simply meant that she was not suicidal"). Further, the observation Plaintiff gets "relief" with pain medication does not describe the level of pain relief.

More importantly, Plaintiff is receiving benefit from her medications in the context of a daily routine that does not include the physical and mental demands of work. Plaintiff's prior negative response to increased activity levels supports Dr. Rook's conclusion that "[i]f Ms. Brodeur attempted to function in a light physical demand level, with restrictions outlined in Dr. Qutub's report, I believe she would invariably sustain a clinical deterioration." (Tr. 604.) The ALJ was required to consider this, since he must

assess the claimant's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).[2]

In short, I find from the foregoing that Dr. Rook's opinion is well supported and consistent with the medical evidence of record, and arguably should have been controlling weight. But even if Dr. Rook's opinion was not entitled to controlling weight, the ALJ was not justified in rejecting Dr. Rook's opinion outright and in not explaining what specific weight he was giving it. As noted previously, even if the treating physician's opinion is not given controlling weight, it is "still entitled to deference and must be weighed using the factors provided in 20 C.F.R. § 404.1527(d)." *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003).

While the Commissioner argues that the ALJ gave Dr. Rook's some deference, this is unclear from the record. The ALJ stated that he gave Dr. Rook's assessment that Plaintiff was capable of less than sedentary work "little weight" (Tr. 528), but he did not explain what this meant and to what extent, if any, he gave weight to any of Dr. Rook's opinions. Where an ALJ fails to articulate the weight given to an opinion, the court cannot meaningfully review the ALJ's determination. *Robinson*, 366 F.3d at 1083.

Further, the ALJ did not state what weight he was giving to the extensive medical findings that Dr. Rook made in support of his opinions. Contrary to the ALJ's findings,

---

[2] A "regular and continuing basis" means the ability to work for "'8 hours a day, for 5 days a week, or an equivalent work schedule,'. . ., and 'to respond appropriately to supervision, coworkers, and customary work pressures in a routine work setting,'. . . ." *Id.* at 1208. It also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.'" *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (emphasis in original) (quotation omitted).

Dr. Rook's medical records make findings regarding medically determinable impairments that could reasonably cause the functional limitations he assessed as discussed previously and the ALJ did not weigh or give deference to those findings.  A medical doctors's statements about a patient's condition or impairments "are specific medical findings".  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The ALJ errs in rejecting those opinions in the absence of conflicting evidence.  *Id.* (ALJ erred in rejecting opinions of treating physicians because of the lack of "results or diagnostic tests of medical findings which led them to their conclusion" since the finding that the plaintiff's condition deteriorates under stress is a specific medical finding).

The ALJ also did not cite, much less discuss, the *Watkins* factors in evaluating Dr. Rook's opinion.  Thus, the ALJ erred in that he did not engage in the proper weighing process regarding Dr. Rook's opinion.  A fair and proper consideration of those factors indicates that Dr. Rook's opinion should have been given considerable weight in determining Plaintiff's RFC.  Dr. Rook has been treating Plaintiff for nearly 13 years.  (Tr. 260.)  He is board certified in physical medicine and rehabilitation, pain medicine and electrodiagnosis.  (*Id.* 606-13.)  He has treated Plaintiff for the specific medical conditions and impairments that render her disabled.  Dr. Rook has repeatedly supported his opinions, both in treatment notes and lengthy narrative reports.  (*Id.* 603-05, 272, 307-08, 555.)  There is also record support for Dr. Rook's opinions, as corroborated both by Plaintiff's testimony and by her vascular surgeon, Dr. Sanders, who in September 1996 stated that Plaintiff should be limited to sedentary work (no lifting over ten pounds) and no repetitive actions.  (*Id.* 216.)

The improper rejection of Dr. Rook's opinion as unsupported is further substantiated by a comparison of ALJ Keohane's findings in the most recent decision and those from his prior decision in 2006. (Tr. 385.) In the 2006 decision, unlike the current one, he gave "great weight to the opinion expressed by the claimant's longtime treating physician, Dr. Rook, who first assessed these limitations in November 1997, and who assessed many of the same limitations in 2005." (*Id.* 390). He found that Dr. Rook's opinion "is based on his extensive treatment history with the claimant, and is also consistent with and well supported by the evidence as a whole." (*Id.*) Although the ALJ ultimately rejected some portions of Dr. Rook's opinions in the 2006 decision, he conceded that the majority of those opinions are "consistent with and well supported by the evidence as a whole." (*Id.*) The ALJ's current decision failed to explain the discrepancy between his findings in the two decisions and casts considerable doubt on the ALJ's proper weighing of Dr. Rook's opinions in this case.

The ALJ also based his decision to give Dr. Rook's opinion "little weight" and not controlling weight on the basis that it was "inconsistent with other substantial evidence of record." (Tr. 527.) However, he erred in not specifying what other evidence he is referring to. Presumably the ALJ is referring to the opinions of consultative examiner Dr. Qutub and the state medical provider, since he relied on their opinions in choosing not to give controlling weight to Dr. Rook's opinions. I find error, however, with the ALJ's decision to rely on them as a basis to reject Dr. Rook's opinions.

Dr. Qutub performed a one-time consultative examination of Plaintiff at the ALJ's directive on October 20, 2007. (Tr. 564-570). The examination lasted thirty-five (35)

minutes. (*Id.* 582, 585.) I find that Dr. Qutub's opinion cannot provide a substantial

basis to override treating physician Dr. Rook's opinions since he purported to conduct a

review of the medical evidence but only referenced very limited material in the record

(less than 4% of the records according to Plaintiff). (Tr. 565.) Thus, Dr. Qutub's report

is suspect as it appears that Dr. Qutub may not have been sufficiently informed to make

a reliable decision.

Moreover, Dr. Qutub's evaluation was conducted nearly twelve years after the

onset of disability, and the RFC form he completed specifically stated that "the

limitations above are assumed to be your opinion *regarding current limitations only.*"

(Tr. 563, emphasis added.) It was inappropriate for the ALJ to rely on Dr. Qutub's

opinion as a retrospective opinion when Dr. Qutub did not respond to the question of

whether he could "form an opinion within a reasonable degree of medical probability as

to past limitations." (*Id.*)[3]

The ALJ also relied on the opinion of the state agency reviewing physician to

discredit Dr. Rook and support Dr. Qutub's opinion. (Tr. 528.) However, I find that this

opinion does not constitute substantial evidence. The opinion of an agency physician

who has never seen the claimant is generally entitled to the least weight. *Robinson*,

366 F.3d at 1084. The Tenth Circuit has indicated that "findings of a nontreating

---

[3] I also note that Dr. Rook is a board certified specialist in the treatment of patients with chronic pain and disabling medical conditions. (Tr. 606-13.) According to the American Board of Physical Medicine and Rehabilitation, "PM&R ... is a medical specialty concerned with the diagnosis, evaluation, and management of persons of all ages with physical and/or cognitive impairment and disability." (*Id.* 615.) On the other hand, there is no indication that Dr. Qutub has any specific training or expertise in the areas of rehabilitative medicine or chronic pain. The only indication from Dr. Qutub's report is the initials "GP" after his signature. (*Id.* 563.) In common medical parlance, "GP" merely refers to a "general practitioner."

physician based upon limited contact and examination are of suspect reliability." *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).  Where a nonexamining physician's report consists solely of boxes checked on the Commissioner's form to indicate his conclusions, such a report, "unaccompanied by thorough written reports or persuasive testimony, [is] not substantial evidence." *Id.*

In this case the state agency physician never personally examined Plaintiff, and had no first hand knowledge of her condition.  His only source of information was a review of her record, and the record at the time of his review only contained a fraction of the final record before the ALJ.  (Tr. 138).  He had none of Dr. Rook's detailed reports regarding Ms. Brodeur's functional limitations, and his report consisted primarily of opinions made on checked off boxes.

Finally, as discussed previously, ALJ Keohane's previous decision in 2006 gave "little weight to the[] opinions [of the reviewing physicians], *instead deferring to the more favorable opinion of Dr. Rook, who has an extensive treatment history with the claimant.*"  (Tr. 391, emphasis added.)  Similarly, at the March 6, 2008 hearing, the ALJ stated on the record that "there is an RFC in the file by a doctor or the DDS service but it talks about lifting and carrying 25 pounds frequently, 50 pounds occasionally. I'm not going to use it. I think it's beyond what we're looking at here."  (Tr. 651.)  The ALJ failed to address these previous findings which were inconsistent with his current decision.

Based on the foregoing, I find that the ALJ's decision to give "little weight" to Dr. Rook's opinions and rely instead on the report of the consultative examiner and the state agency physician is not supported by substantial evidence.

2.     <u>Plaintiff's Credibility</u>

I also find that the ALJ erred in assessing Plaintiff's credibility and complaints of pain. The ALJ found that, "[i]n light of the inconsistencies and contradictions in [Plaintiff's] testimony, along with the lack of objective medical support for several of her impairments, the undersigned finds that the claimant is not a credible witness, and thus little weight is given her complaints of pain." (Tr. 525.) Dr. Rook's July 2008 letter explained, however, the objective evidence in the record that supports Plaintiff's complaints of pain (*id.* 603). Further, the ALJ improperly relied on a negative assessment of Plaintiff's credibility as supportive of his decision to reject Dr. Rook's opinion. However, as discussed previously, an ALJ is not permitted to reject a treating physician's opinion on the basis of his credibility judgments. *Langley*, 373 F.3d at 1121.

Further, both thoracic outlet syndrome ("TOS")and myofascial pain syndrome have pain as a symptom and are not necessarily diagnosed through objective tests. http://emedicine.medscape.com/article/760477-overview *(*"no objective confirmatory test is available" for TOS); http://emedicine.medscape.com/article/313007-diagnosis ("No specific lab tests confirm a diagnosis of myofascial pain"); *see also Simmonds v. Massanari*, 160 F. Supp. 2d 1235, 1243 (D. Kan. 2001) (ALJ improperly discredited claimant's complaints of pain because x-rays were normal; myofascial pain is not demonstrated by x-rays). Given the ALJ's acceptance of these two syndromes as severe, It is hard to understand how he could then completely discredit Plaintiff's complaints of pain. *See Thompson*, 987 F.2d at 1490 ("Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is

substantial evidence for the ALJ to find that the claimant's pain is insignificant"); *Romero v. Astrue*, 242 Fed. Appx. 536 (10th Cir. 2007) ("Dr. Haddock's conclusions concerning Ms. Romero's pain and limitation. . . find support in the treatment records and therefore could not be cursorily dismissed for the reason the ALJ gave: lack of medical evidence").

The ALJ s credibility analysis did not take the above factors into account. Further, he did not properly evaluate other relevant factors in the credibility analysis, including Plaintiff's repeated attempts to get relief from pain, the drugs she has been prescribed for same, and the side effects noted in the record. *See Carpenter v. Chater*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("[t]he ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication").

The ALJ also failed to consider the evidence that Dr. Rook found Plaintiff to be credible. (Tr. 307-08, 605). Further, he appeared to nitpick Plaintiff's testimony at the different hearings (*id.* 526), finding dramatic discrepancies which in reality are not present. He also found that Plaintiff's credibility was affected by her statements regarding medication side-effects (*id.*); however, the record supports the fact that she suffers some side effects. Finally, despite my prior Remand Order admonishing the ALJ for improperly discounting Plaintiff's credibility merely because she is able to perform

basic household and daily tasks (*id.* 410), the ALJ continued to rely on such activities to support his credibility analysis. "The fact that one engages in household chores and ordinary life activities is not necessarily inconsistent with complaints of pain, and in now way directs a finding that a person is able to work." *Draper v. Barnhart*, 425 F.3d 1127, 1130-31 (8th Cir. 2005); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Finally, the law is clear that the Commissioner "must demonstrate that sufficient jobs exist in the national economy that the claimant may perform given the level of pain [she] suffers". *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1993). "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do . . . work." In *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). The ALJ also did not consider this issue or employ a vocational expert on the issue of pain.

3. <u>Whether the ALJ Improperly Relied on Testimony by the Vocational Expert that Conflicts with the Dictionary of Occupational Titles</u>

In addition to the errors in weighing the medical opinions, Plaintiff argues that the ALJ relied on vocational testimony that conflicts with the Dictionary of Occupational Titles (DOT) in violation of *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999) and SSR 00-4p. *Haddock* held that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* at 1091.

Defendant essentially concedes that the ALJ should not have relied on the occupations of Photocopy Machine Operator and Flagger (two of the three jobs the ALJ found Plaintiff could do) because Plaintiff's RFC is inconsistent with their descriptions in the RFC and the ALJ did not elicit an explanation for this discrepancy as required by *Haddock*..[4] This generally requires reversal and a remand for the ALJ to address the apparent conflict. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

However, I note in this case that the Commissioner previously committed the same error in 2002, as the ALJ did not explaining discrepancies between the VE's testimony and the DOT (Tr. 412). The case was remanded for further fact finding. The ALJ ignored that Remand Order and made the same mistake again in his current decision. Given that, I am not convinced that a remand on this issue would be properly considered and/or that a correct result would be achieved on this issue.

Further, given my findings that the ALJ improperly weighed the medical evidence, the hypothetical question relied on by the ALJ is not reliable and cannot support his burden at step five. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (VE testimony only constitutes substantial evidence when provided in response to hypothetical questions that "related with precision all of a claimant's impairments").[5]

---

[4] The hypothetical that incorporated Plaintiff's RFC stated that Plaintiff would be limited to "occasional" reaching, handling and fingering with her dominant right upper extremity, but the DOT indicates that the Photocopy Machine Operator and Flagger jobs require "frequent" reaching and handling. Moreover, the Photocopy Machine Operator requires "frequent" fingering. The VE's identification of these jobs is thus in direct conflict with the DOT and there is not a reasonable explanation in the record for the discrepancy.

[5] The Commissioner also argues that evidence of other jobs exists based on testimony of vocational experts at prior hearings before ALJs . This, however, is an impermissible *post hoc* rationalization, since the ALJ did not reference any such testimony in his decision, and is not properly

4. <u>Whether the Claim Should Be Remanded or Reversed for an Immediate Award of Benefits</u>

The final issue that must be addressed is whether this case should be reversed and remanded for further factfinding or a rehearing or whether the case should be reversed with an award of benefits. I note that Plaintiff's claim was originally filed in August 1998, and has been pending for almost eleven years. She has been through four ALJ hearings, one Appeals Council remand and two remands from this Court. The most recent decision yet again contains numerous substantial errors, and ignores my prior Remand Order of March 11, 2005, which addressed some of these issues.

Indeed, as explained above, the Commissioner (through its administrative law judges) has repeatedly rejected treating physician Dr. Rook's opinions without adequate justification and without adequately weighing his opinions and the other medical evidence. I note also that this case was remanded at the Commissioner's request from this Court in 2007 to properly evaluate Dr. Rook's opinion on the restriction to occasional stress and tension (Tr. 537). The ALJ appears also to have ignored that order, as the issue was not addressed. The foregoing discussion demonstrates that the Commissioner has had numerous opportunities to properly evaluate this case but has not done so, despite Court directives providing guidance on the issue. Given these circumstances, it appears that yet another remand would be an act in futility, as the ALJs have demonstrated a complete disregard for the Court's directives.

---

before the Court. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *Robinson*, 366 F.3d at 1084. Further, the prior VE testimony was provided in response to different hypothetical questions, and thus may not encompass all of Plaintiff's impairments.

Further, the VE testified at the hearing relevant to the ALJ's decision at issue that the limitations outlined by Dr. Rook preclude all employment, and it does not appear that there is substantial evidence in the record to the contrary. Notably, the ALJ's errors–and those in the previous three decisions that were reversed–all occurred at step five of the sequential evaluation process, where the burden of proof is on the ALJ. The ALJ has not yet met its burden, despite numerous opportunities.

Based on these circumstances, I agree with Plaintiff that outright reversal with an award of benefits is appropriate rather than a remand for further fact finding. The Tenth Circuit has reversed in situations similar to this. *See Stephens v. Apfel*, No. 97-6090, 1998 WL 42524, at *3 (10th Cir. 1998) ("This case has dragged on through eight years and three inadequate ALJ decisions.... Under the circumstances, we conclude that an award of benefits is appropriate"); *Havice v. Chater*, No. 96-5074, 1997 WL 8852, at *7 (10th Cir. 1997) ("After three hearings, the Secretary still has not met her burden of showing that the claimant retained the ability to perform a significant number of jobs in the economy. ... The case is remanded, therefore, for an immediate award of disability benefits"); *Sisco v. U.S. Dept. of Health & Human Services*, 10 F.3d 739, 746 (10th Cir. 1993) (the Commissioner "is not entitled to adjudicate a case *ad infinitum* until he correctly applies the proper legal standard and gathers evidence to support his conclusion"); *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993) ("In light of the Secretary's patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Secretary's erroneous disposition of the proceedings, we exercise our discretionary authority to remand for an immediate award

of benefits"); *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (""[O]utright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose""(quotations omitted).

IV.  CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED**, and the case is **REMANDED** to the Commissioner for an immediate award of benefits to Plaintiff.

Dated March 31, 2010

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge